UNITED STATES OF DISTRICT COURT
FOR NORTHERN DISCTRICT OF ILLINOIS
EASTERN DIVIONS

| | | |
|---|---|---|
| GERALD D. W. NORTH | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-05698 |
| | ) | |
| UBIQUITY, INC., a Nevada Corporation, f/k/a UBIQUITY BROADCAST CORPORATION, a Delaware Corporation, f/k/a UBIQUITY HOLDING INC., a Delaware Corporation, | ) ) ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES, Plaintiff, GERALD D. W. NORTH, by his attorney, Merle L. Royce, and complains of Defendant, UBIQUITY, INC., as follows:

### GENERAL ALLEGATIONS

#### Nature of the Action

1. This is an action for damages and specific performance resulting from Defendant Ubiquity, Inc.'s breach of contract in connection with a management advisory services independent contractor agreement

#### The Parties

2. Gerald D.W. North ("North") is the assignee and holder of all rights, title to and Interest of Gerald D.W. North & Associates ("North & Associates), an unincorporated, sole proprietorship with its principal place of business in Chicago, Illinois that was previously

1

operated and owned by North. At all relevant times, North conducted business through North & Associates and maintained a condominium apartment in Chicago.

3. Defendant Ubiquity, Inc. ("Ubiquity") is a Nevada corporation with its principal place of business in Orange County, California. Ubiquity's shares are publicly traded on the OTCQB market under the ticker symbol UBIQ.

4. The contract was between North and Ubiquity Holdings, Inc. has since merged to become Ubiquity, Inc.

### Jurisdiction

5. Subject matter jurisdiction exists pursuant to the 28 U.S.C. § 1332. North and Ubiquity are of diverse citizenship and the amount in controversy, exclusive of interest and costs, the sum of $75,000.

6. Ubiquity is amenable to personal jurisdiction in Illinois pursuant 735 ILCS § 5/2-209 (a)(7), as it contracted with North & Associates, an Illinois entity, for the provision of contract services.

### Venue

7. Venue exists in this District pursuant to 28 U.S.C. § 1391, because Ubiquity contracted with North & Associates here and a certain "Commencement Fee" was due under the contract upon the execution and delivery of the contract to North & Associates.

### BACKGROUND FACTS

8. North & Associates was in the business of providing strategic advisory and business development services to businesses, especially those businesses operating in the technology and telecommunications industries.

9. Ubiquity held itself out as a "technology-focused media company" and sought North & Associates' assistance in developing Ubiquity's business.

10. On December 15, 2006, Ubiquity's predecessor, Ubiquity Holdings, and North & Associates entered into a written agreement (the "Agreement") under which North & Associates was to provide certain advisory management services to Ubiquity Holding over an 18 month period, through June 15, 2008, in exchange for payment of certain fees and expenses. The parties contemplated that North & Associates would assist Ubiquity Holdings in developing a strategic partnership with an established technology company.

11. The Agreement provided that, in addition to a "Success Fee" and reimbursement of expenses, Ubiquity Holdings would pay North & Associates a "Commencement Fee" for undertaking the engagement. This Commencement Fee was to be in the form of a stock warrant (the "Warrant"). The Warrant to North & Associates included the right to purchase up to the greater of (i) 250,000 shares of common stock, or (ii) one and one-half percent (1.5%) of the largest aggregate number of shares issued and outstanding during the first 90 days of the Agreement, at a price per share of $1.00, and was subject to a cashless exercise clause that would allow North & Associates to exercise the Warrant without the need to make any cash payment once shares of Ubiquity exceed the exercise price.. The Warrant was to be exercisable for a period of five (5) years. In addition, Ubiquity Holdings undertook to include North & Associates in any public offering that resulted in the issuance of registered shares.

12. The Agreement specifically provides that the Commencement Fee was not contingent upon North & Associates providing any services to Ubiquity Holdings. The Agreement specifies that the Commencement Fee "constitutes payment for North's [North & Associates'] agreement to consult with the Company [Ubiquity Holdings] and is a non-refundable, non-

apportionable, and non-ratable retainer, not a prepayment of future services." The Agreement further states: "If Company [Ubiquity Holdings] decides to terminate this Agreement prior to the end of the term for any reason whatsoever, North [North & Associates] will not be requested or required to return any part of the Commencement Fee," and Ubiquity Holdings obligation to issue the Warrant "shall survive the termination of this Agreement."

13. Prior to, and immediately upon being retained, North & Associates began to perform various services for Ubiquity Holdings. North & Associates assisted Ubiquity Holdings in procuring Charles Levine, a former President of Sprint, as Ubiquity Holdings' new CEO. North & Associates also was instrumental in arranging for Stephen A. Bansak, Jr., formerly Vice Chairman of Kidder Peabody, to join Ubiquity Holdings' board of directors.

14. While providing advisory services to Ubiquity Holdings, North & Associates uncovered previously undisclosed bankruptcies as well as lawsuits alleging fraud against Ubiquity Holdings, Connie Jordan and Chris Carmichael, the two Ubiquity Holdings principals, for soliciting funds from elderly members of a religious congregation by false representation.

15. Upon discovering the existence of these lawsuits alleging claims for fraud, North & Associates, so advised Ubiquity Holdings' Board and recommended that the Board investigate the allegations.

16. On February 28, 2007, almost immediately after North & Associate's report to the Board, Ubiquity Holdings terminated North & Associate's Agreement without explanation or cause.

17. On March 16, 2007, Ubiquity Holding acknowledged and reaffirmed in writing its obligation to issue the Warrant but requested that North execute a release of claims. North did not respond to the request for a release.

18. Subsequently, Ubiquity Holdings, Inc. (later renamed Ubiquity Broadcasting Corporation completed a reverse merger that made it a reporting NASDAQ ("pink sheet") company and completed two 4:1 forward stock splits, without any notification to North & Associates. As a result of these steps, the Warrant would have entitled North & Associates to 4,000,000 shares at a cost of $.0625 per share. Ubiquity has since completed a 3.5:1 reverse stock split, such that the adjusted number of shares to which North & Associates would have been entitled under the Warrant in Ubiquity is 1,142,857 shares with a cost of $0.21875 per share.

19. On February 3, 2014, North made written demand on Ubiquity for issuance of the Warrant. On February 18, 2014, Ubiquity refused, stating that "the Agreement terminated no later than June 15, 2008," conceding that Ubiquity Holding had breached its obligation to issue the Warrant on June 15, 2008. On September 22, 2014, Ubiquity's Registration Rights agreement became effective.

20. North filed an action in Arizona on June 13, 2014, seeking damages or specific enforcement of the contract between North & Associates and Ubiquity Holdings. While acknowledging that it was the entity that resulted from the merger involving Ubiquity Holdings, Inc., Ubiquity claimed that it was not amenable to the jurisdiction of the Arizona courts, because it contracted with North & Associates, an Illinois entity.

## COUNT I

### (Breach of Contract)

1-20. Plaintiff North adopts and incorporates by reference Paragraphs 1 through 20 above as Paragraphs 1 through 20 of this Count I.

5

21. North & Associates performed all the terms, conditions and covenants on its part under its Agreement with Ubiquity Holdings, and to the extent that any terms, conditions and/or covenants have not been performed by North & Associates, they have been waived or are otherwise excused or prevented by Ubiquity Holdings' termination of North & Associates or its own breach of the Agreement.

22. Ubiquity Holdings breached the Agreement by failing to issue the Warrant to North & Associates.

23. As a direct and proximate result of Ubiquity Holdings' breach, North & Associates has suffered and continues to suffer, damages in an amount not finally ascertained but not less than $6 million, based on the closing price of Ubiquity shares on the date its Registration Rights agreement became effective. If based on earlier, higher share prices, North's damages would exceed $9 million.

24. Ubiquity is liable to North in the amount of not less than $6 million as it is the successor to Ubiquity Holdings and North is the assignee and successor to North & Associates.

WHEREFORE, Plaintiff GERALD D. W. NORTH prays that the Court grant him the following relief:

(A) Enter judgment in his favor and against UBIQUITY INC. in the amount of six million dollars ($6,000,000) or such larger or lessor amount as determined at trial;

(B) Award him the costs of suit; and

(C) Grant him such other or further relief as the Court may deem just and reasonable.

## COUNT II

### (Specific Performance)

1-20. Plaintiff North adopts and incorporates by reference Paragraphs 1 through 20 above as Paragraphs 1 through 20 of this Count II.

21. North & Associates performed all the terms, conditions and covenants on its part under its Agreement with Ubiquity Holdings, and to the extent that any terms, conditions and/or covenants have not been performed by North & Associates, they have been waived or are otherwise excused or prevented by Ubiquity Holdings' termination of North & Associates or its own breach of the Agreement.

22. Ubiquity Holdings breached the Agreement by failing to issue the Warrant to North & Associates.

23. Ubiquity is liable to North under the Agreement between Ubiquity Holdins and North & Associates as Ubiquity is the successor to Ubiquity Holdings and North is the assignee and successor to North & Associates.

24. Plaintiff North has no adequate remedy at law to be compensated for the rights accruing under the Warrant.

WHEREFORE, Plaintiff GERALD D. W. NORTH prays that the Court grant him the following relief:

(A) Enter a decree of specific performance directing UBIQUITY INC. to issue a warrant for the purchase of 1,142,857 share of Ubiquity at a cost of $0.21875 per share, to allow GERALD D. W. NORTH to exercise said Warrant on a cashless exercise basis for the issuance of the appropriate number of registered shares without restriction;

(B) Award him the of the costs of suit; and

(C) Grant him such other and further relief as the Court may deem just and proper.

                                            GERALD D. W. NORTH

                                            By: /s/ Merle L. Royce
                                                  His Attorney

Merle L. Royce
Law Office of Merle L. Royce
70 West Madison, Suite 2100
Chicago, IL 60602
(312) 553-1233 & Email: Royce4law@gmail.com